IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| ARTHUR R. MOSELEY, # 199398, ) | Civil Action No. 3:05-0797-HFF-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| NFN KING, LIEUTENANT AT LIEBER ) | |
| CORRECTIONAL INSTITUTION; ) | |
| NFN WILSON, SERGEANT; ) | |
| NFN MCGEE, SERGEANT; ) | |
| NFN BROOKS, CORPORAL; ) | |
| NFN HAYNES, CORPORAL; ) | |
| NFN SCOTT, OFFICER; ) | |
| NFN WRIGHT, OFFICER; ) | |
| NFN HILTON, OFFICER; ) | |
| TEGAN EGGERS, NURSE (RN); ) | |
| SOUTH CAROLINA DEPARTMENT OF ) | |
| CORRECTIONS; ) | |
| NFN SANDERS, NURSE; ) | |
| TONYA MCCANTS, COUNSELOR; ) | |
| NFN COMPTON, COUNSELOR; ) | |
| STAN BURTT, WARDEN; ) | |
| NFN CARRINGTON, INSTITUTIONAL ) | |
| GRIEVANCE COORDINATOR; ) | |
| NFN JENKINS, INSTITUTIONAL GRIEVANCE) | |
| COORDINATOR; ) | |
| NFN WHITTEN, CAPTAIN; ) | |
| NFN PALMER, OFFICER; AND ) | |
| ALEGRA BELLAMY, ) | |
| ) **REPORT AND RECOMMENDATION** | |
| Defendants. ) | |
| ) | |

Plaintiff filed this action on March 17, 2005.[1] On May 6, 2005, he filed an amended

complaint. His allegations concern incidents that occurred while he was an inmate at the Lieber

---

[1] Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(e), DSC. Because these are dispositive motions, this report and recommendation is entered for review by the court.

Correctional Institution ("LCI") of the South Carolina Department of Corrections ("SCDC"). Plaintiff was later released form SCDC custody. See Defendants' Motion for Summary Judgment; Plaintiff's change of address notices filed October 7, 2005, and January 6 and February 6, 2006. Defendants filed a motion for summary judgment on December 27, 2005. Plaintiff, because he is proceeding pro se, was advised on January 4, 2006, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion for summary judgment with additional evidence or counter-affidavits could result in the dismissal of his complaint. Plaintiff did not file any materials in opposition to Defendants' motion for summary judgment.[2]

## MOTION FOR DEFAULT

On June 13, 2005, Plaintiff filed a motion for default judgment. Defendants, in their response filed June 30, 2005, contend that Plaintiff mistakenly calculated the time to answer (from the date of the Court's serve order and not from the date of service). Returns of service filed in this action shows that service as to NFN Palmer was returned unexecuted on May 18, 2005, and that Defendants King, Wilson, Carrington, Bellamy, Whitten, Jenkins, McGee, Brooks, Haynes, Burtt, Scott, Compton, McCants, Wright, Sanders, Hilton, and Eggers were served on May 24, 2005. Plaintiff has presented no evidence to show that Defendants were properly served prior to May 24, 2005. Defendants filed their answer less than 20 days later, on June 9, 2005. The Federal Rules provide:

> Unless a different time is prescribed in a statute of the United States, a defendant shall serve an answer

---

[2] The undersigned has addressed Plaintiff's claims on the merits. Alternatively, it is recommended that Plaintiff's claims be dismissed pursuant to Rule 41(b), Fed. R. Civ. P., for failure to prosecute.

> (A) within 20 days after being served with the summons and complaint

Fed. R. Civ. P. 12(a).  It is therefore, recommended that Plaintiff's motion for default (Doc. 22) be denied.

MOTIONS FOR PRELIMINARY INJUNCTIONS

On May 19, 2005, Plaintiff filed pleadings titled "Motion-Leave to Amend Documents in Support of Rule 65 Preliminary Injunction on (B) Temp. Rest. Order Rule 15(A)" and "Motion - Amendments to Conform to Evidence Rule 15(B) to § 1983 complaint."  These pleadings appear to be motions for preliminary injunctions or temporary restraining orders.   In his Complaint and Amended Complaint, Plaintiff requests that he be transferred from LCI.  Plaintiff requests a transfer to another institution.  On June 15, 2005, Plaintiff filed a motion for an immediate transfer.  Defendants filed a memorandum in opposition on July 5, 2005.  On July 20, 2005, Plaintiff filed a response with copies of his requests to staff members, grievances, and affidavits from other inmates concerning incidents that occurred well after the filing of this action.  He filed a pleading titled "Motion 'Amendments to confirm to the evidence Rule 15(b) - to Motion in Opposition to Defendants['] Memorandum in Opposition to Plaintiff[']s motion for immediate transfer' Memorandum" on August 10, 2005.  This appears to be another motion for an immediate transfer.

The court is required to consider and balance four factors in determining whether to grant injunctive relief prior to a trial on the merits:

> (a)  plaintiff's likelihood of success in the underlying dispute between the parties;

>> (b) whether plaintiff will suffer irreparable injury if the interim relief is denied;
>
>> (c) the injury to defendant if an injunction is issued; and
>
>> (d) the public interest.

Manning v. Hunt, 119 F.3d 254, 263 (4th Cir. 1997); Hughes Network Sys., Inc. v. InterDigital Commc'n Corp., 17 F.3d 691, 693 (4th Cir. 1994); North Carolina State Ports Auth. v. Dart Containerline Co., Ltd., 592 F.2d 749 (4th Cir. 1979); and Blackwelder Furniture Co. v. Seilig Manufacturing Co., 550 F.2d 189 (4th Cir. 1977).  The two most important factors are probable irreparable injury to a plaintiff if the relief is not granted and the likelihood of harm to a defendant if the injunction is granted.  Manning, 119 F.3d at 263; North Carolina State Ports Auth., 592 F.2d at 750.

A plaintiff does not have an automatic right to a preliminary injunction, and such relief should be used sparingly.  The primary purpose of injunctive relief is to preserve the status quo pending a resolution on the merits.  Injunctive relief which changes the status quo pending trial is limited to cases where "the exigencies of the situation demand such relief."  Wetzel v. Edwards, 635 F.2d 283, 286 (4th Cir. 1980).

Plaintiff claims that he is entitled to injunctive relief because his life is in danger.  He also appears to claim that Defendants are deliberately indifferent to his medical needs, he is subjected to unconstitutional living conditions, Defendants attempted to contaminate his food tray, he has had problems with his mail, and Defendants took actions in retaliation for his filing grievances.  Defendants, in their July 5, 2005 response, contend that Plaintiff fails to show that any of the

alleged actions placed his life in jeopardy, he offers no evidence to substantiate his allegations, and he has not shown that he is entitled to emergency relief.

Plaintiff's motions for a preliminary injunction and motions for an immediate transfer should be denied as moot because he is no longer an inmate at SCDC. His motions for a preliminary injunction should also be denied because, as discussed below, Plaintiff is unlikely to be successful in the underlying dispute between the parties. Additionally, Plaintiff is unlikely to suffer irreparable injury if interim relief is denied. It is, therefore, recommended that Plaintiff's motions for a preliminary injunction (Docs. 15 and 17) and his motions for an immediate transfer (Docs. 24 and 48) be denied.

## MOTION FOR SUMMARY JUDGMENT

Plaintiff claims that his constitutional rights were violated because Defendants subjected him to cruel and unusual punishment concerning his living conditions, were deliberately indifferent to his medical needs, and denied him access to the courts.[3] He requests a transfer from LCI and $250,000 in damages. Defendants argue that they are entitled to summary judgment because: (1) Plaintiff's claims for equitable relief are moot; (2) Plaintiff has failed to exhaust his administrative

---

[3]Plaintiff may also be attempting to assert a claim for retaliation. Bare assertions of retaliation do not establish a claim of constitutional dimensions. See Adams v. Rice, 40 F.3d 72 (4th Cir. 1994), cert. denied, 514 U.S. 1022 (1995). In order to state a claim for retaliation, an inmate must show that the alleged retaliation had an adverse impact on the exercise of his constitutional rights. Id. at 75. "In the prison context, we treat such claims with skepticism because '[e]very act of discipline by prison officials is by definition "retaliatory" in the sense that it responds to prisoner misconduct.'" Cochran v. Morris, 73 F.3d 1310 (4th Cir. 1996)(en banc), citing, Adams, 40 F.3d at 74.

remedies;[4] (3) the Prison Litigation Reform Act precludes Plaintiff's claims for damages for emotional distress and mental anguish; (4) Plaintiff fails to establish an Eighth Amendment claim as to his conditions of confinement; (5) Plaintiff fails to establish a claim for denial of access to the courts; (6) Plaintiff fails to establish a claim for denial of medical care; (7) Defendants are entitled to qualified immunity; and (8) Defendants cannot be held liable on a theory of respondeat superior.[5]

     1.    Conditions of Confinement

Plaintiff alleges that his Eighth Amendment rights were violated by his conditions of confinement because was placed in a "stripped" cell at times. He alleges that Defendants failed to follow certain SCDC policies in doing so. Defendants contend that Plaintiff fails to establish a claim concerning his prison conditions because he fails to show that his deprivations were sufficiently serious and he fails to show that Defendants acted with a sufficiently culpable state of mind.

---

[4] It is unclear from the materials submitted whether Plaintiff has exhausted his administrative remedies as to all issues. "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

[5] The doctrine of respondeat superior generally is inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action. See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); Fisher v. Washington Metro Area Transit Authority, 690 F.2d 1133, 1142-43 (4th Cir. 1982). Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization. Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984), cert. denied, Reed v. Slakan, 470 U.S. 1035 (1985).

The Eighth Amendment provides protection with respect to "the treatment a prisoner receives in prison and the conditions under which he is confined." Helling v. McKinney, 509 U.S. 25, 31 (1993). However, the constitutional prohibition against the infliction of cruel and unusual punishment "does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson v. Seiter, 501 U.S. 294, 298 (1991). Eighth Amendment protection from cruel and unusual living conditions has both objective and subjective components. First, deprivations must be objectively serious in the sense that they violate contemporary notions of decency. Rhodes v. Chapman, 452 U.S. 337 (1981). Second, the plaintiff must show that subjectively the prison officials acted with a sufficiently culpable state of mind. Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir.), cert. denied, 510 U.S. 949 (1993). The Supreme Court has held that prison officials cannot be held liable under the Eighth Amendment unless they knew of and disregarded an excessive risk to inmate health or safety. Farmer v. Brennan, 511 U.S. 825 (1994). A plaintiff must produce evidence of serious or significant physical or emotional injury resulting from the challenged conditions to withstand summary judgment on a prison living conditions claim. Strickler, 989 F.2d at 1380-81.

Defendant King states that Plaintiff would repeatedly masturbate in front of the windows of his cell which faced a guard's station where female officers were posted. Because of this, Plaintiff was slated to be moved to another cell. He refused to cooperate with efforts to move him and he was placed in a restraint chair for less than four hours, he was checked by Nurse Sanders while he was in the chair, and he was checked when he was released to make sure he was not injured. Lt. King states that the chair was used to further the penological interest of obtaining

7

compliance, maintaining security, and ensuring prison safety. He states that Plaintiff's cell was "stripped out," with his jumpsuit and mattress removed on occasions when Plaintiff deliberately flooded his cell by stopping up his toilet. Lt. King states that Defendants did not take any of Plaintiff's personal hygiene or legal documents with him, and the property taken was returned within 72 hours. King Aff.

Plaintiff fails to allege or show any physical injuries resulting from his living conditions, including his placement in a stripped cell. The PLRA provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury.[6]

42 U.S.C. § 1997e(e). Further, allegations that defendants have not followed their own policies or procedures, standing alone, do not amount to constitutional violations. See United States v. Caceres, 440 U.S. 741 (1978); see also Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990)(if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue); Keeler v. Pea, 782 F. Supp. 42, 44 (D.S.C. 1992)(violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983).[7]

---

[6] The PLRA does not define "physical injury" and the Fourth Circuit has not ruled on the issue, but the Fifth Circuit held that "physical injury" must be more than de minimis, but need not be significant. Siglar v. Hightower, 112 F.3d 191 (5th Cir. 1997)(concluding that a sore, bruised ear lasting for three days was de minimis and failed to meet the requisite physical injury to support a claim of emotional or mental suffering); see also Zehner v. Trigg, 952 F. Supp. 1318 (S.D. Ind. 1997)(exposure to asbestos not physical injury necessary to support claim for mental or emotional injury under the PLRA), aff'd, 133 F.3d 459 (7th Cir. 1997).

[7] To the extent that Plaintiff is attempting to assert an excessive force claim, his claim fails
(continued…)

2.  Medical Claims

Plaintiff appears to allege that Defendants were deliberately indifferent to his medical needs because it took him several days to be seen by a nurse at a time when he had a cold, sore muscles, constipation, and a possible strep throat. He also claims that Defendants did not give him an asthma medicine he thought he should have. Defendants argue that Plaintiffs's claims do not rise to the level of an Eighth Amendment violation because he fails to show deliberate indifference to a serious medical need.

In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.
>
> * * * * * * *
>
> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 182-83, 96 S.Ct. at 2925 (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted).

---

⁷(...continued)
because he has not shown anything more than de minimis injury. See Norman v. Taylor, 25 F.3d 1259, 1262-1263 (4th Cir. 1994), cert. denied, 513 U.S. 1114 (1995)

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation.

> Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citations omitted). . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851.

The Supreme Court defined "deliberate indifference" in the Eighth Amendment context in Farmer v. Brennan, 511 U.S. 825 (1994). The court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concern when it imposes tort liability on a purely objective basis. [Citations omitted]. But an official's

> failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Id. at 837-38.

Unless medical needs were serious or life threatening, and the defendants were deliberately and intentionally indifferent to those needs of which he was aware at the time, a plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, supra; Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Plaintiff fails to show that Defendants were deliberately indifferent to any of his serious medical needs. First, Plaintiff has not shown that he had any serious medical needs. Further, he fails to show deliberate indifference. Plaintiff admits that he was treated by a physician on March 2, 2005, and that he talked to nurses who brought him medications twice a day. Amended Complaint at 4.

Plaintiff appears to disagree with the type and amount of medical treatment he received. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). The provision of medical care by prison officials is not discretionary, but the type and amount of medical care is discretionary. See Brown v. Thompson, 868 F. Supp. 326 (S.D.Ga. 1994). A disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. See Smart v. Villar, 547 F.2d 112 (10th Cir. 1976); Lamb v. Maschner, 633 F. Supp. 351, 353 (D.Kan. 1986). Although Plaintiff believes that he should have received different medical treatment, he fails to show that Defendants' actions or inactions rose to the level of a constitutional violation.

11

3.	Access to the Courts

Plaintiff appears to allege that he was denied access to the courts because Defendants took away his "legal" box for a few days when he his cell was stripped. He may also be attempting to assert a claim concerning the amount of paper and writing utensils he received or was allowed to keep. Defendants contend that Plaintiff's claim fails because he has not shown any actual injury resulting from their actions. Lt. King states that on a number of occasions Plaintiff covered the windows of his cell with paper. He states that this hazardous because the guards could not see what Plaintiff was doing. Correctional officers confiscated papers Plaintiff put in the windows. Lt. King states that any legal papers confiscated were later returned to Plaintiff. King Aff.

In Bounds v. Smith, 430 U.S. 817 (1977), the United States Supreme Court determined that prisoners have an absolute right to access to the courts, both to allow them to attack their convictions and to file other lawsuits. The decision merely requires that the right of access to the courts not be impeded. The right of access to the courts is the "right to bring to court a grievance that the inmate wished to present," and violations of that right occur only when an inmate is "hindered [in] his efforts to pursue a legal claim." Lewis v. Casey, 518 U.S. 343 (1996). In order to make out a prima facie case of denial of access to the courts, the inmate cannot rely on conclusory allegations; he must identify with specificity an actual injury resulting from official conduct. Cochran v. Morris, 73 F.3d 1310, 1316 (4th Cir. 1996); see also White v. White, 886 F.2d 721, 723-24 (4th Cir. 1989); Strickler v. Waters, 989 F.2d 1375, 1382-85 (4th Cir. 1993), cert. denied, 510 U.S. 949 (1993). A plaintiff must demonstrate, for example, that the inadequacy of the prison law library or the available legal assistance caused such actual injury as the late filing

of a court document or the dismissal of an otherwise meritorious claim. Lewis, 518 U.S. at 353-54.

Plaintiff fails to show actual injury from his alleged denial of access to the courts. Despite his claims, he has been able to file numerous lengthy pleadings in this action. He also filed many grievances and requests to staff members with SCDC. Further, he admits that his legal materials were returned to him after a few days. Amended Complaint at 4-4a.

### 4. Qualified Immunity

Defendants argue that they are entitled to qualified immunity. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

The Court of Appeals for the Fourth Circuit has stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995).  As discussed above, Plaintiff fails to show that the individual Defendants (King, Wilson, McGee, Brooks, Haynes, Scott, Wright, Hilton, Eggers, Sanders, McCants, Compton, Burtt, Carrington, Jenkins, Whitten, Palmer, and Bellamy) violated any of his clearly established constitutional or statutory rights.  Therefore, these individual Defendants are entitled to qualified immunity in their individual capacities.

## CONCLUSION

Based on review of the record, it is recommended that Plaintiff's motions for a preliminary injunction and immediate transfer (Docs. 15, 17, 24, and 48) be denied; Plaintiff's motion for default judgment (Doc. 22) be denied, and Defendants' motion for summary judgment (Doc. 57) be granted.

    Respectfully submitted,

    s/Joseph R. McCrorey
    United States Magistrate Judge

February 14, 2006
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

# Notice of Right to File Objections to Magistrate Judge's Report and Recommendation
# &
# The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of its filing. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be delivered to a United States District Judge fourteen (14) days after this Report and Recommendation is filed. Advance Coating Technology, Inc. v. LEP Chemical, Ltd., 142 F.R.D. 91, 94 & n. 3 (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. See Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the ten-day period, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. See United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-47 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991). See also Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-19 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

See also Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd. Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections. See Wright, supra,; and Small v. Secretary of HHS, 892 F.2d 15, 16 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing addressed as follows:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201