IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| ARTHUR R. MOSELEY, # 199398, | ) | Civil Action No. 3:05-0797-HFF-JRM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| NFN KING, LIEUTENANT AT LIEBER | ) | |
| CORRECTIONAL INSTITUTION; | ) | |
| NFN WILSON, SERGEANT; | ) | |
| NFN MCGEE, SERGEANT; | ) | |
| NFN BROOKS, CORPORAL; | ) | |
| NFN HAYNES, CORPORAL; | ) | |
| NFN SCOTT, OFFICER; | ) | |
| NFN WRIGHT, OFFICER; | ) | |
| NFN HILTON, OFFICER; | ) | |
| TEGAN EGGERS, NURSE (RN); | ) | |
| SOUTH CAROLINA DEPARTMENT OF | ) | |
| CORRECTIONS; | ) | |
| NFN SANDERS, NURSE; | ) | |
| TONYA MCCANTS, COUNSELOR; | ) | |
| NFN COMPTON, COUNSELOR; | ) | |
| STAN BURTT, WARDEN; | ) | |
| NFN CARRINGTON, INSTITUTIONAL | ) | |
| GRIEVANCE COORDINATOR; | ) | |
| NFN JENKINS, INSTITUTIONAL GRIEVANCE | ) | |
| COORDINATOR; | ) | |
| NFN WHITTEN, CAPTAIN; | ) | |
| NFN PALMER, OFFICER; AND | ) | |
| ALEGRA BELLAMY, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendants. | ) | |
| | ) | |

Plaintiff filed this action on March 17, 2005.[1]  On May 6, 2005, he filed an amended

complaint ("AC").  His allegations concern incidents that occurred while he was an inmate at the

Lieber Correctional Institution ("LCI") of the South Carolina Department of Corrections ("SCDC").

---

[1]Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(e), DSC.  Because these are dispositive motions, this Report and Recommendation is entered for review by the court.

Plaintiff was later released from SCDC custody.  See Defendants' Motion for Summary Judgment;

Plaintiff's change of address notices filed October 7, 2005, and January 6 and February 6, 2006.[2]

Defendants filed a motion for summary judgment on December 27, 2005.  Plaintiff, because he is

proceeding pro se, was advised on January 4, 2006, pursuant to Roseboro v. Garrison, 528 F.2d 309

(4th Cir. 1975), that a failure to respond to Defendants' motion for summary judgment with

additional evidence or counter-affidavits could result in the dismissal of his complaint.  Plaintiff did

not file any materials in opposition to Defendants' motion for summary judgment.  On February 14,

2006, the undersigned recommended that Plaintiff's motion for summary judgment be granted either

on the merits or alternatively pursuant to Federal Rule 41(b) for failure to prosecute.  Plaintiff filed

objections on March 22, 2006 (Plaintiff's Objection Memorandum).  With his objections, Plaintiff

included his view of the facts and supporting materials.  The Honorable Henry F. Floyd, United

States District Judge, in an order dated March 27, 2006, adopted those portions of the Report which

recommended that Plaintiff's motions for default judgment and injunctive relief be denied.  As to

the portion of the Report concerning Defendants' motion for summary judgment,  Judge Floyd

wrote:

> [D]ue to Plaintiff's failure to respond to the motion [for summary judgment]
> in a timely fashion (the response was not filed until March 22, 2006), the
> Magistrate Judge did not have the benefit of Plaintiff's view of the facts
> when he entered his Report.  Although the Court typically will not consider
> a response which is untimely filed, here Plaintiff has alleged that he was
> prevented from accessing his legal materials and that his change of address
> resulted in a delay in his receiving filings made in this case.  Based on these
> allegations, the Court believes that justice would be best served by
> recommitting Defendants' motion for summary judgment to the Magistrate
> Judge for him to reevaluate the motion in light of Plaintiff's response.  Of
> course, the Magistrate Judge may, in his discretion, permit Defendants to file
> a reply and may enter further orders and reports as necessary.

---

[2]Plaintiff is currently detained at the Williamsburg County Detention Center.

Judge Floyd's order at 3.  No other materials have been filed by Defendants.  The undersigned has now reviewed the materials submitted by Plaintiff[3] and submits this revised Report and Recommendation.

## MOTION FOR SUMMARY JUDGMENT

Plaintiff claims that his constitutional rights were violated because Defendants subjected him to cruel and unusual punishment concerning his living conditions, were deliberately indifferent to his medical needs, denied him access to the courts, verbally threatened and harassed him, and failed to properly process his grievances.[4]  He requests a transfer from LCI and $250,000 in damages. Defendants argue that they are entitled to summary judgment because: (1) Plaintiff's claims for equitable relief are moot; (2) Plaintiff has failed to exhaust his administrative remedies;[5] (3) the Prison Litigation Reform Act ("PLRA") precludes Plaintiff's claims for damages for emotional distress and mental anguish; (4) Plaintiff fails to establish an Eighth Amendment claim as to his

---

[3]Plaintiff has submitted affidavits from other inmates and numerous SCDC grievances. Many of the materials submitted concern incidents that occurred after the filing of the amended complaint which are not properly before the Court.  Also, many of the objections concern the motion for preliminary injunction which has already been ruled on by Judge Floyd.

[4]Plaintiff may also be attempting to assert a claim for retaliation.  Bare assertions of retaliation do not establish a claim of constitutional dimensions.  See Adams v. Rice, 40 F.3d 72 (4th Cir. 1994), cert. denied, 514 U.S. 1022 (1995).  In order to state a claim for retaliation, an inmate must show that the alleged retaliation had an adverse impact on the exercise of his constitutional rights.  Id. at 75.  "In the prison context, we treat such claims with skepticism because '[e]very act of discipline by prison officials is by definition "retaliatory" in the sense that it responds to prisoner misconduct.'"  Cochran v. Morris, 73 F.3d 1310 (4th Cir. 1996)(en banc), citing, Adams, 40 F.3d at 74.

[5]It is unclear from the materials submitted whether Plaintiff has exhausted his administrative remedies as to all issues.  "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Defendants have not submitted records or affidavits from the grievance coordinator concerning exhaustion of these grievances.  Plaintiff appears to admit that some grievances were not exhausted, but claims that Defendants impeded exhaustion.  Plaintiff's Objections at 10.

conditions of confinement; (5) Plaintiff fails to establish a claim for denial of access to the courts;

(6) Plaintiff fails to establish a claim for denial of medical care; (7) Defendants are entitled to

qualified immunity; and (8) Defendants cannot be held liable on a theory of respondeat superior.[6]

1.     Conditions of Confinement

Plaintiff alleges that his Eighth Amendment rights were violated by his conditions

of confinement because was placed in a "stripped" cell at times.  He alleges that Defendants failed

to follow certain SCDC policies in doing so.  Specifically, Plaintiff claims that his mattress, blanket,

linens, clothing except for boxer shorts, and hygiene products were taken from him for

approximately thirty days on October 7, 2004; for a few days on December 31, 2004; for

approximately eleven days on January 6, 2005; for an unspecified number of days on February 21,

2005; and for an unspecified number of days on March 3, 2005.  He claims that the cell had

"freezing" ventilation.  The cell had a toilet and sink, and Plaintiff appears to have been able to use

a shower.  Defendants contend that Plaintiff fails to establish a claim concerning his prison

conditions because he fails to show that his deprivations were sufficiently serious, and he fails to

show that Defendants acted with a sufficiently culpable state of mind.

The Eighth Amendment provides protection with respect to "the treatment a prisoner receives

in prison and the conditions under which he is confined."  Helling v. McKinney, 509 U.S. 25, 31

(1993).  However, the constitutional prohibition against the infliction of cruel and unusual

---

[6]The doctrine of respondeat superior generally is inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action.  See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); Fisher v. Washington Metro Area Transit Authority, 690 F.2d 1133, 1142-43 (4th Cir. 1982).  Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization.  Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984), cert. denied, Reed v. Slakan, 470 U.S. 1035 (1985).

4

punishment "does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson v. Seiter, 501 U.S. 294, 298 (1991). Eighth Amendment protection from cruel and unusual living conditions has both objective and subjective components. First, deprivations must be objectively serious in the sense that they violate contemporary notions of decency. Rhodes v. Chapman, 452 U.S. 337 (1981). Second, the plaintiff must show that subjectively the prison officials acted with a sufficiently culpable state of mind. Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir.), cert. denied, 510 U.S. 949 (1993). The Supreme Court has held that prison officials cannot be held liable under the Eighth Amendment unless they knew of and disregarded an excessive risk to inmate health or safety. Farmer v. Brennan, 511 U.S. 825 (1994). A plaintiff must produce evidence of serious or significant physical or emotional injury resulting from the challenged conditions to withstand summary judgment on a prison living conditions claim. Strickler, 989 F.2d at 1380-81.

Defendant King states that Plaintiff would repeatedly masturbate in front of the windows of his cell which faced a guard's station where female officers were posted. Because of this, Plaintiff was slated to be moved to another cell. He refused to cooperate with efforts to move him, he was placed in a restraint chair for less than four hours, he was checked by Nurse Sanders while he was in the chair, and he was checked when he was released to make sure he was not injured.[7] Lt. King

---

[7]In his amended complaint, Plaintiff mentions that he was placed in a restraint chair on one occasion prior to being placed in a stripped cell and that mace was used against him on two occasions. He, however, does not appear to allege excessive force claims concerning these incidents. To the extent, however, that Plaintiff is attempting to assert an excessive force claim concerning the use of mace or the restraint chair, his claims fail because he has not shown anything more than de minimis injury. See Norman v. Taylor, 25 F.3d 1259, 1262-1263 (4th Cir. 1994), cert. denied, 513 U.S. 1114 (1995)

states that the chair was used to further the penological interest of obtaining compliance, maintaining security, and ensuring prison safety. He states that Plaintiff's cell was "stripped out," with his jumpsuit and mattress removed on occasions when Plaintiff deliberately flooded his cell by stopping up his toilet. Lt. King states that Defendants did not take any of Plaintiff's personal hygiene items or legal documents with him, and the property taken was returned within seventy-two hours. Additionally, King states that Plaintiff, on a number of occasions, covered his windows in violation of Lieber policy that forbids covering windows and which is a safety hazard as it prevents guards from seeing what inmates are doing. King Aff.

Plaintiff fails to establish a constitutional claim because he has not shown any serious or significant physical or emotional injury resulting from the alleged conditions. See Strickler, 989 F.2d at 1380-1381. In his opposition memorandum, Plaintiff attempts to claim that his living conditions aggravated medical problems he already had, including asthma, psychological problems, a back injury, and psoriasis. He has, however, provided no medical records or other evidence to show this. He also appears to speculate as to what injuries might have occurred from such living conditions, such as he could have had a stroke. Such speculation, however, falls short of actual serious or significant injury.

Further, the PLRA provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury.[8]

---

[8]The PLRA does not define "physical injury" and the Fourth Circuit has not ruled on the issue, but the Fifth Circuit held that "physical injury" must be more than de minimis, but need not be significant. Siglar v. Hightower, 112 F.3d 191 (5th Cir. 1997)(concluding that a sore, bruised ear lasting for three days was de minimis and failed to meet the requisite physical injury to support a claim of emotional or mental suffering); see also Zehner v. Trigg, 952 F. Supp. 1318 (S.D. Ind. (continued...)

42 U.S.C. § 1997e(e).[9]   Here, Plaintiff has not made such a showing of physical injury.

The alleged conditions, in the light most favorable to Plaintiff, were certainly harsh.  The strip cell conditions, however, came after Plaintiff performed prohibited actions such as flooding his cell and placing papers over his cell window.[10]  He may disagree with the policies, but he has not shown a constitutional violation.  Further, there is no indication that Plaintiff was placed under the stripped cell conditions except as a result of his own actions.  If he had complied with prison policies, he would not have been placed in the stripped cell.

To the extent Plaintiff is claiming that Defendants have not followed their own policies, his claims fail as a failure of prison officials to follow their own policies or procedures, standing alone, do not amount to constitutional violations.  See United States v. Caceres, 440 U.S. 741 (1978); see also Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990)(if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a

_____

[8](...continued)
1997)(exposure to asbestos not physical injury necessary to support claim for mental or emotional injury under the PLRA), aff'd, 133 F.3d 459 (7th Cir. 1997).

[9]In his objection memorandum, Plaintiff claims that the PLRA does not apply to him because he has now been released from SCDC custody.  In the case cited by Plaintiff, Kerr v. Puckett, 138 F.3d 321 (7th Cir. 1998), the Seventh Circuit found that the PLRA provision barring prisoners from bringing suit for mental or emotional injury without prior showing of physical injury did not apply to an action filed by inmate after he was released on parole.  Here, unlike Kerr, Plaintiff filed this action (both the complaint and amended complaint) while he was still a prisoner at SCDC.

[10]If Plaintiff is complaining about disciplinary proceedings, or the outcome of any disciplinary proceedings, those claims are barred by Heck v. Humphrey, 512 U.S. 477 (1994) and Edwards v. Balisok, 520 U.S. 641 (1997)(Heck precludes a § 1983 claim in a prison disciplinary hearing which has not been previously invalidated, where the challenge would necessarily imply the invalidity of the deprivation of good-time credits); see also Kerr v. Orellana, 969 F. Supp. 357 (E.D.Va. 1997)(holding that prisoner's § 1983 claim for monetary damages and injunctive relief related to his disciplinary hearing was precluded under Heck).  Plaintiff has not shown that he successfully attacked any disciplinary hearing conviction.

federal due process issue); <u>Keeler v. Pea</u>, 782 F. Supp. 42, 44 (D.S.C. 1992)(violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983).

      2.    <u>Medical Claims</u>

      Plaintiff appears to allege that Defendants were deliberately indifferent to his medical needs because it took him several days to be seen by a nurse at a time when he had a cold, flu, sore muscles, constipation, and a possible strep throat. He also claims that Defendants did not give him an asthma medicine he thought he should have. Defendants contend that Plaintiffs's claims do not rise to the level of an Eighth Amendment violation because he fails to show deliberate indifference to a serious medical need.

      In the case of <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," <u>Id.</u>, quoting <u>Gregg v. Georgia</u>, 428 U.S. 153, 169-73 (1976). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.
>
>       * * * * * * *
>
> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," <u>Gregg v. Georgia</u>, <u>supra</u>, at 182-83, 96 S.Ct. at 2925 (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

<u>Estelle</u>, 429 U.S. at 103-105. (Footnotes omitted).

      Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation.

> Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of

Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be

so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to

fundamental fairness (citations omitted). . . nevertheless, mere negligence or malpractice does not

violate the Eighth Amendment." Id. at 851.

The Supreme Court defined "deliberate indifference" in the Eighth Amendment context in

Farmer v. Brennan, 511 U.S. 825 (1994). The court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concern when it imposes tort liability on a purely objective basis. [Citations omitted]. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Id. at 837-38.

Unless medical needs were serious or life threatening, and the defendants were deliberately and intentionally indifferent to those needs of which he was aware at the time, a plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, supra; Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Plaintiff fails to show that Defendants were deliberately indifferent to any of his serious medical needs. First, Plaintiff has not shown that he had any serious medical needs. Further, he fails to show deliberate indifference. Plaintiff admits that he was treated by a physician on March 2, 2005, and he talked to nurses who brought him medications twice a day. AC at 4. He also admits that he received a stool softener for constipation on February 24, 2005. Plaintiff's Objection Memorandum at 19.

Plaintiff appears to disagree with the type and amount of medical treatment he received. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). The provision of medical care by prison officials is not discretionary, but the type and amount of medical care is discretionary. See Brown v. Thompson, 868 F. Supp. 326 (S.D.Ga. 1994). A disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. See Smart v. Villar, 547 F.2d 112 (10th Cir. 1976); Lamb v. Maschner, 633 F. Supp. 351, 353 (D.Kan. 1986). Although Plaintiff believes that he should have received different medical treatment, he fails to show that Defendants' actions or inactions rose to the level of a constitutional violation.

3.     Access to the Courts

Plaintiff appears to allege that he was denied access to the courts because Defendants took away his "legal" box on several occasions for a few days when he his cell was stripped, went

10

through his legal box looking for contraband, and would not let him talk on a "legal" phone call for as long as he wished. He may also be attempting to assert a claim concerning the amount of paper and writing utensils he received or was allowed to keep. Defendants contend that Plaintiff's claim fails because he has not shown any actual injury resulting from their actions. Lt. King states that when Plaintiff placed papers in the windows of his cell, correctional officers confiscated the papers, but any legal papers confiscated were later returned to Plaintiff. King Aff.

In Bounds v. Smith, 430 U.S. 817 (1977), the United States Supreme Court determined that prisoners have an absolute right to access to the courts, both to allow them to attack their convictions and to file other lawsuits. The decision merely requires that the right of access to the courts not be impeded. The right of access to the courts is the "right to bring to court a grievance that the inmate wished to present," and violations of that right occur only when an inmate is "hindered [in] his efforts to pursue a legal claim." Lewis v. Casey, 518 U.S. 343 (1996). In order to make out a prima facie case of denial of access to the courts, the inmate cannot rely on conclusory allegations; he must identify with specificity an actual injury resulting from official conduct. Cochran v. Morris, 73 F.3d 1310, 1316 (4th Cir. 1996); see also White v. White, 886 F.2d 721, 723-24 (4th Cir. 1989); Strickler v. Waters, 989 F.2d 1375, 1382-85 (4th Cir. 1993), cert. denied, 510 U.S. 949 (1993). A plaintiff must demonstrate, for example, that the inadequacy of the prison law library or the available legal assistance caused such actual injury as the late filing of a court document or the dismissal of an otherwise meritorious claim. Lewis, 518 U.S. at 353-54.

Plaintiff fails to show actual injury from his alleged denial of access to the courts. Despite his claims, he has been able to file numerous lengthy pleadings in this action. He also filed many grievances and requests to staff members with SCDC. Further, he admits that his legal materials were returned to him after a few days. AC at 4-4a.

11

4.     <u>Verbal Threats/Harassment</u>

Plaintiff alleges that Defendants verbally threatened or harassed him on a number of occasions.  He asserts that on October 7, 2004, he was "verbally threatened" by Lt. King, Sgt. Wilson, Cpl. Brooks, and Ofc. Scott after he flooded his cell.  AC at 4c.  On December 31, 2004, Officer Wright allegedly told Plaintiff "I got you're a-s now."  AC at 4b.  On that same date, Officer Bellamy allegedly teased and taunted Plaintiff about his mother and threatened "if I catch her with my man I'll kick the old b-tch as-!"  AC at 4c.  On March 14, 2005, Officer Wright allegedly told him "F-ck you n-gga! You slept all day.  This is for that bulls-tting as- paperwork of yours."  AC at 4a.

Although the alleged comments and threats, if true, are unprofessional, crude, and insensitive, Plaintiff fails to show that they rise to the level of a constitutional violation.  <u>See</u> <u>Patton v. Przybylski</u>, 822 F.2d 697, 700 (7th Cir.1987); <u>Carter v. Morris</u>, 164 F.3d 215, 219 n. 3 (4th Cir. 1999).  Additionally, defamatory statements alone do not state a cognizable claim under 42 U.S.C. § 1983.  <u>Paul v. Davis</u>, 424 U.S. 693 (1976).  Further, verbal abuse of inmates by guards, without more, fails to state a claim under § 1983.   <u>Keenan v. Hall</u>, 83 F.3d 1083, 1092 (9th Cir. 1996)(disrespectful and assaultive comments did not violate Eighth Amendment); <u>McDowell v. Jones</u>, 990 F.2d 433, 434 (8th Cir. 1993)(verbal threats and name calling are usually not actionable under § 1983); <u>Northington v. Jackson</u>, 973 F.2d 1518, 1524 (10th Cir. 1992); <u>Collins v. Cundy</u>, 603 F.2d 825 (10th Cir. 1979)(sheriff's idle threat to hang a prisoner did not give rise to a § 1983 claim); <u>Lamb v. Hutto</u>, 467 F. Supp. 562 (E.D.Va. 1979)(verbal assaults and threats do not state a constitutional claim actionable under § 1983).

5.     <u>Grievances</u>

Plaintiff appears to allege that Defendants violated his constitutional rights by failing to timely and properly process his grievances.  Allegations that Defendants have not followed their own policies or procedures, standing alone, do not amount to constitutional violations.  See United States v. Caceres, 440 U.S. 741 (1978); see also Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990)(if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue); Keeler v. Pea, 782 F. Supp. 42, 44 (D.S.C. 1992)(violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983).

     6.     Qualified Immunity

Defendants argue that they are entitled to qualified immunity.  The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

The Court of Appeals for the Fourth Circuit has stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged."  Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent."  As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995).  As discussed above, Plaintiff fails to show that the individual Defendants (King, Wilson, McGee, Brooks, Haynes, Scott, Wright, Hilton, Eggers, Sanders, McCants, Compton, Burtt, Carrington, Jenkins, Whitten, Palmer, and Bellamy) violated any of his clearly established constitutional or statutory rights.  Therefore, these individual Defendants are entitled to qualified immunity in their individual capacities.

<u>CONCLUSION</u>

Based on review of the record, it is recommended that Defendants' motion for summary judgment (Doc. 57) be granted.[11]

Respectfully submitted,

s/Joseph R. McCrory
United States Magistrate Judge

August 31, 2006
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

---

[11]Plaintiff also filed a letter on July 17, 2006 in which he appears to be requesting case status information.  The letter has been docketed as a motion (Doc. 70) for a ruling on Defendants' motion for summary judgment.  The undersigned can only make a recommendation as to Defendants' motion for summary judgment.  See 28 U.S.C. § 636 and Local Rule 73.02(B)(2)(e), DSC. Plaintiff's motion, however,  should be deemed moot at the time Judge Floyd rules on Defendants' motion for summary judgment.

### Notice of Right to File Objections to Magistrate Judge's Report and Recommendation
### &
### The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of its filing. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be delivered to a United States District Judge fourteen (14) days after this Report and Recommendation is filed. Advance Coating Technology, Inc. v. LEP Chemical, Ltd., 142 F.R.D. 91, 94 & n. 3 (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. See Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the ten-day period, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. See United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-47 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991). See also Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, *supra*, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-19 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

See also Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd. Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections. See Wright, *supra*,; and Small v. Secretary of HHS, 892 F.2d 15, 16 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing addressed as follows:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201
